Matthew J. Jacobs (SBN 171149)
 mjacobs@velaw.com
Colin P. McDonell (SBN 289099)
 cmcdonell@velaw.com
VINSON & ELKINS LLP
525 Market Street, Suite 2750
San Francisco, CA 94105-2763
Telephone: (415) 979-6900
Facsimile: (415) 651-8786

Attorneys for Defendant
JOSEPH J. GIRAUDO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG,<br><br>Defendants. | Case No.  CR 14-534-CRB<br><br>**JOINT STATUS REPORT OF DEFENDANTS JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, AND ABRAHAM S. FARAG FOR JUNE 10, 2015 STATUS CONFERENCE** |
|---|---|

Defendants Joseph J. Giraudo, Raymond A. Grinsell, Kevin Cullinane, James F. Appenrodt and Abraham S. Farag ("Defendants") submit this brief Status Conference Statement in connection with the hearing scheduled for June 10, 2015 in an effort to assist the Court.

**I.   CASE STATUS**

On October 22, 2014, the Government indicted the Defendants on charges of antitrust violations (15 U.S.C. § 1) and mail fraud (18 U.S.C. § 1341). *See* Indictment, Dkt. No. 1. The allegations concern real estate purchased at public foreclosure auctions in San Francisco and San Mateo counties. The Court held an initial conference on January 21, 2015, and then set this status

1  conference for June 10, 2015. As set forth below, and for the reasons stated herein, the Defendants
2  request the Court to set the next hearing for September 9, 2015.

3  **II.     STATUS OF DISCOVERY**

4        The Defendants have received roughly 2.6 million pages and approximately 1,900 hours of
5  audio and video recordings. The discovery has continued to roll in, and indeed the last set of
6  materials was produced within the last two weeks. The extent of these materials, which cover a
7  variety of cases including those indicted in other districts, is so voluminous and the organization and
8  formatting are such that it has been impossible for the Defendants to make any realistic or
9  meaningful assessment of the government's evidence to date, or to begin effectively to prepare for
10 trial. Given the volume, and the fact that much of the discovery apparently relates to cases that have
11 nothing to do with these charges, the Defendants have been seeking the Government's assistance in
12 understanding what materials would actually be relevant in a trial. It is critical that the Defendants
13 not have to review these materials multiple times, or search for a needle in a haystack.

14       In discussions prior to this hearing, the Government has now agreed to sit down with Defense
15 counsel to confer about possible ways for the Government to streamline the discovery. In addition,
16 the parties have agreed to meet and confer about limitations on the scope of what transactions are
17 alleged to be fraudulent, and about the deficiencies in the Indictment. Our hope is that these
18 discussions will be successful and that Court intervention will not be necessary. The plan is to hold
19 those meet and confer sessions shortly in an effort to amicably resolve the issues. If the parties are
20 unable to do so, we will have no choice but to seek the Court's intervention. Once the discovery
21 issues are sorted out, the Defendants can begin preparing in earnest to review that discovery and to
22 frame the issues about deficiencies in the Indictment for the Court's consideration.

23       To give the Court some sense of the volume of discovery, the initial production consisted of
24 plea agreements for government cooperators, 9,700 surveillance photos, and almost 3,000 video and
25 audio files. Those recordings alone spanned 1,670 hours. While the government included a
26 rudimentary index to these recordings with its production, that index identified only the county and
27
28

date where each recording was made, leaving 1062 potentially relevant recordings to be reviewed.[1] During January 2015, the government produced 608,759 pages of documents that the FBI seized from various targets. In March 2015, almost five months after prosecutors indicted this case, the government produced more than 23,000 pages of FBI 302's and Memoranda of Interviews. The government's phased production has continued: during the month preceding this application alone, the government additionally produced over 3,100 documents and more recordings.

Compounding difficulties with the volume of the discovery is the format of the productions. The indexes for the files are unhelpful, some of them matching Bates Numbers for the files to only a date or a county. And the lack of organization of the files themselves makes it difficult to even locate documents pertaining to a particular date or county, even with the indexes.[2] As just one example, the hard drive containing seized documents alone contains hundreds of thousands of files assembled in a labyrinth of over two thousand folders, most of which are not named or structured with any apparent organization.

The difficulty of preparing is compounded by the fact that while the government has charged only a few purchases in its indictment, it has identified more than 400 transactions as being potentially relevant, each of which has an independent fact pattern: different purchasers, different bidders, different banks and bidding processes, and so forth. At this point, Defendants have no choice but to take seriously the Government's threat and be prepared to defend against every transaction.

**B.     Substantive Issues**

Defendants advised at the last hearing that the Government's indictment was notable in a number of respects including the combination of mail fraud and Sherman Act charges in what is, at heart, a plain vanilla bid rigging case. The Defendants believe that the Court will ultimately have to

---

[1] Approximately two weeks ago, the government identified the specific recordings that are relevant to the defendants, allowing counsel to finally begin analyzing these.

[2] The Government provided a rudimentary index that identified the locations from where the various documents were seized, but that is not sufficient to make the documents usable because it doesn't provide any manner for determining which of the 608,759 pages contain information that is relevant to the conduct at issue.

evaluate whether there is any legal basis for mail fraud charges and continue to assess how best to frame that issue for the Court's consideration. At the last hearing, Defendants discussed the possibility of making motions for a Bill of Particulars and/or challenging the sufficiency of the Indictment. But until the Defendants can better understand the discovery, it would be premature to bring such motions.

### III. NEXT HEARING

Defendants have met and conferred with the government but were unable to come to an agreement as to a date for the next status conference. The discovery issues need to be resolved so that Defendants can actually review some of the key discovery and make decisions about how to proceed.  Accordingly, Defendants request that the Court set the next status conference date as September 9, 2015, at which time Defendants hope that the discovery issues will have been resolved and that the case can proceed to the motions stage.

Dated: June 9, 2015                                    VINSON & ELKINS LLP

By:   /s/
      Matthew J. Jacobs
      Attorneys for Defendant
      JOSEPH J. GIRAUDO

Dated: June 9, 2015                                    SIDEMAN & BANCROFT LLP

By:   /s/
      Louis P. Fuechtbaum
      Attorneys for Defendant
      RAYMOND A. GRINSELL

Dated: June 9, 2015                                    LAW OFFICES OF DORON WEINBERG

By:   /s/
      Doron Weinberg
      Attorneys for Defendant
      KEVIN B. CULLINANE

| | |
|---|---|
| Dated: June 9, 2015 | ROSEN BIEN GALVAN & GRUNFELD LLP |
| | By: /s/<br>Jeffrey L. Bornstein<br>Attorneys for Defendant<br>JAMES F. APPENRODT |
| Dated: June 9, 2015 | LAW OFFICES OF DORON WEINBERG |
| | By: /s/<br>Daniel M. Wall<br>Attorneys for Defendant<br>ABRAHAM S. FARAG |