THOMAS GREENE (CSBN 57159)
ANDREW J. NICHOLSON-MEADE (CSBN 284070)
KEVIN B. HART (NYRN 3038031)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Andrew.Nicholson-Meade@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH J. GIRAUDO,<br>RAYMOND A. GRINSELL,<br>KEVIN B. CULLINANE,<br>JAMES F. APPENRODT, and<br>ABRAHAM S. FARAG,<br><br>Defendants. | CASE NO. CR 3:14-00534 CRB<br><br>**UNITED STATES' MOTION FOR AN ORDER REQUIRING DEFENDANTS TO SPECIFICALLY IDENTIFY EVIDENCE THEY CLAIM IS TAINTED AND THE BASIS FOR THAT CLAIM AND MOTION *IN LIMINE* REGARDING ATTORNEY SUBPOENAS** |

**INTRODUCTION**

Ninth Circuit precedent requires the defendants to identify each piece of evidence for which they seek suppression and to come forward with specific evidence demonstrating taint. The government does not have a burden of proof to show inevitable discovery, alternative source, or attenuation unless and until defendants identify a factual nexus between each piece of challenged evidence and the suppressed recordings that show how the recordings tainted each piece of evidence.

Defendants have yet to specifically identify allegedly tainted evidence. After initially suggesting the entire prosecution is tainted, defendants recently, in a footnote, disclosed five categories of things they now claim are tainted. Several of these categories are so broad that it would be impossible for the government to put on evidence proving attenuation, independent source, or inevitable discovery for every piece of evidence that falls into one of the five categories in a one-week hearing—let alone defend the discovery of any other categories on the chance that defendants may later try to add to their list.

The Court has expressed an interest in concluding the evidentiary hearing the week of February 27. To permit the government to develop the factual record the law requires during the evidentiary hearing (regarding independent sources, inevitable discovery, or attenuation of tainted evidence), the Court should order the defendants to identify specific pieces of evidence they contend to be tainted and the factual nexus between such evidence and the suppressed recordings. Identification in advance will be useful because it will provide the government with notice of what is at issue during the February 27 hearing. The defendants can then use the hearing to make the requisite factual showing for the evidence at issue, and the government will have the opportunity to meet its burden upon that showing. This procedure will impose a minimal burden on defendants, who need only identify the evidence they contend to be tainted and explain the basis for that claim.

Defendants also served subpoenas on four current or former Antitrust Division employees, including three attorneys. The defendants served declarations along with the subpoenas, which identify expansive topics of testimony sought from the subpoenaed officials. The declarations are not limited to the pre-indictment time frame or the investigation. Taken at face value, they also encompass any use, review, or reference to the suppressed recordings in the course of litigation, encroaching on core areas of

//

privilege and work product and straying from what is at issue in the upcoming hearings: whether the suppressed recordings were used to obtain additional evidence. The government therefore moves to limit the examination of the witnesses to what is non-privileged and relevant.

## BACKGROUND

After the Court suppressed the stationary audio recordings, the government disclosed the limited ways in which the stationary recordings were used during its investigation. Specifically, the government disclosed that the only ways the stationary recordings were used in the context of gathering additional evidence was during two plea negotiation meetings and three witness debrief interviews.

Defendants responded to the government's submission by seeking suppression of all of the government's evidence obtained after December 22, 2009, the date of the first stationary recording. Dkt. 170 at 2. Alternatively, the defendants requested that the government be required to prove the absence of taint for the entirety of its case. *Id.* The defendants did not articulate a factual nexus between the suppressed recordings and any allegedly tainted evidence. The Court scheduled a taint hearing to provide the defendants the opportunity to challenge the government's assertions through the examination of FBI Special Agents Wynar and Bond.

At the hearing, defendants maintained that the burden rested with the government to prove the absence of taint, but did not identify the evidence they sought to suppress as tainted in advance of the taint hearing. Hr'g Tr. 154:6-23, Jan. 19, 2017. However, on February 14, 2017, in a reply brief in support of a motion to compel, defendants, for the first time, in a footnote, identified general categories of things they contend are tainted. Defendants asserted, without explanation, that they "have identified tainted pen registers, search warrants, witness statements, development of cooperating witnesses, and plea negotiations." Dkt. 209 at 4 n.2. The footnote did not explain how the stationary recordings tainted the things defendants identified. Nor did defendants specify which witness statements or "cooperating witnesses" they contend are tainted, what evidence they contend was developed and tainted as a result of these allegedly tainted categories, or what potential testimony, if any, should be excluded from trial.

During the course of the investigation, apart from the stationary recordings, the government collected a substantial amount of evidence indicative of bid rigging. Specifically, the government's potential trial evidence falls into the following categories: (1) consensual recordings made by

//

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB
2

cooperating sources; (2) consensual recordings made by the undercover agent; (3) physical surveillance conducted by the FBI and video recordings and photographs taken by the FBI; (4) documents obtained from trash cover searches; (5) public records or documents obtained from real estate databases such as Foreclosure Radar; (6) telephone records obtained pursuant to pen registers; (7) seized documents obtained pursuant to search warrants; (8) documents voluntarily produced by cooperating sources or witnesses; (9) documents or records produced pursuant to grand jury subpoenas; and (10) witness testimony.  Because the defendants identified only certain categories of evidence they contend to be tainted, defendants appear to exclude from their challenge any evidence falling into the categories of consensual recordings, physical surveillance reports or photographs, documents obtained from trash covers or public-records searches, or documents produced voluntarily or pursuant to a subpoena.  *See* Dkt. 209 at 4 n.2.

The government obtained and produced voluminous items in each category of evidence.  For example, the undercover agent and cooperating sources made nearly 300 consensual recordings.  Likewise, the government received thousands of documents in response to dozens of subpoenas issued to banks, telephone companies, trustee and posting companies, shipping companies, and entities owned by subjects of the investigation.  The government also obtained statements from more than 250 individuals and has produced more than 450 reports of interviews to the defense.  These interviews took place over a time period of more than six years and reflect statements made by a variety of individuals ranging from trustee representatives to auctioneers to innocent bidders, as well as the defendants' coconspirators.  Twenty individuals have pleaded guilty to bid rigging at foreclosure auctions held in San Francisco or San Mateo counties and have agreed to cooperate with the government's investigation.[1]  The government used suppressed recordings during plea negotiation meetings with counsel for only two of these witnesses, Mohammed Rezaian and Daniel Rosenbledt.

//

---

[1] These cooperating defendants are Gary Anderson, Patrick Campion, Kuo Hsuan Chang, Gilbert Chung, James Doherty, Lydia Fong, Florence Fung, Keith Goodman, Troy Kent, Craig Lipton, Norman Montalvo, Michael Navone, Henri Pessah, Mohammed Rezaian, Daniel Rosenbledt, Laith Salma, Robert Williams, and Matthew Worthing, each of whom pleaded guilty before this Court.  In addition, Miguel DeSanz and John Shiells were charged with bid rigging in San Francisco County (in addition to other counties) and pleaded guilty before Judge Hamilton.

On February 2, 2017, defendants served the government with four subpoenas seeking the testimony of Antitrust Division attorney Albert Sambat, former Antitrust Division attorneys David Ward and Christina Wheeler, and Antitrust Division paralegal Celestine Susi. With the subpoenas, defendants provided declarations describing the testimony sought from each witness. Decl. of Jeffery Bornstein In Supp. of Subpoena for Celestine Susi ("Bornstein Decl. for Susi"), attached as Ex. A; Bornstein Decls. In Supp. of Subpoenas for Albert Sambat, Christina Wheeler, and David Ward ("Bornstein Decls. for Att'ys"), attached as Exs. B-D. The topics that the defendants plan to cover with each attorney are identical. Bornstein Decls. for Att'ys ¶ 9(a-m). The declaration accompanying the subpoena issued to Ms. Susi is also identical, except that it also seeks testimony regarding Ms. Susi's declaration submitted in this matter. Bornstein Decl. for Susi ¶ 9(n). In the declarations, defendants do not limit their proposed inquiry to the government's collection of additional evidence based on the suppressed recordings. Instead, they seek information about the storage of suppressed recordings, how attorneys prepared for witness interviews, and whether the attorneys created memoranda that refer to the recordings. Bornstein Decls. ¶ 9(g),(b),(c)

## ARGUMENT

### I. The Defendants Should Specifically Identify the Evidence They Seek To Exclude as Tainted Before the Evidentiary Hearings Continue

The government understands that the Court wants to conclude the evidentiary hearing regarding taint by the end of the week of February 27. As things stand, until defendants specifically identify the evidence they seek to exclude as tainted, with only a few exceptions, the government has no way of knowing for which of the voluminous pieces of evidence gathered in this case it needs to present evidence of independent source, inevitable discovery, and attenuation. In order to give both parties a fair opportunity to meet their evidentiary burdens, defendants must put specific pieces of evidence at issue and explain how they are tainted in advance of the hearing. The law does not require the government to prove the absence of taint for the entire prosecution at the outset, and the evidentiary hearing should fairly reflect that legal framework.

To the extent that defendants contend they need the evidentiary hearing to develop a factual nexus to other not-yet-identified evidence, they should still be required to explain what evidence they

//

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB
4

believe to be tainted and the basis for that belief. If they intend to use the taint hearing as a form of discovery, and not provide notice of the evidence they seek to exclude until some later point, then the evidentiary hearing may need to be reopened later to permit the government to meet its burden.

### A. Defendants Bear The Initial Burden To Establish The Existence Of Taint

As the Ninth Circuit has explained, the defendant bears the initial burden in any taint proceeding. *United States v. Cella*, 568 F.2d 1266, 1284 (9th Cir. 1977). To satisfy that burden, the defendant must come forward with "specific evidence demonstrating taint" as to each piece of evidence it seeks to exclude. *Id.*; *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980). Defendants cannot satisfy their burden by proving only that "an illegal search and seizure" occurred. *Cella*, 568 F.2d at 1285. The "mere establishment of an illegal search does not place upon the Government the burden of proving each and every piece of evidence is free from taint." *United States v. Allard*, 600 F.2d 1301, 1305 (9th Cir. 1979). And defendants "must do more than merely speculate that all of the Government's evidence *may* be tainted and demand that the Government prove the genealogy of each and every piece of evidence it intends to use against them." *United States v. Ahmed*, 94 F. Supp. 3d 394, 437 (S.D. N.Y. 2015) (emphasis in original); *see also Cella*, 568 F.2d at 1284.

Only after the defendant has identified the specific piece of evidence it contends is tainted and established a factual nexus between that evidence and the violation does the burden shift to the government to show that "particular evidence is not fruit of the poisonous tree." *Kandik*, 633 F.2d at 1335. Evidence should not be suppressed as the fruit of the poisonous tree if (1) it was obtained through a independent source, *Murray v. United States*, 487 U.S. 533, 537 (1988); (2) it would have been inevitably discovered, *Nix v. Williams*, 467 U.S. 431, 447 (1984); or (3) the chain of causation between the improperly obtained evidence and additional evidence is too attenuated. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

### B. Unless Defendants Identify Allegedly Tainted Evidence, The Government Does Not Have Sufficient Notice To Prove the Absence of Taint

At present, the government lacks adequate notice of which specific pieces of evidence the defendants are seeking to exclude as tainted and why. Defendants' recent blanket-assertion that pen

//

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB

registers, search warrants, witness statements, cooperating witnesses, and plea negotiations are all tainted does not put the government on notice as to the pieces of evidence that are at issue in this taint proceeding, let alone the asserted factual nexus that defendants contend puts them at issue.  For example, defendants' identification of "witness statements" does not inform the government which of the more than 450 statements it produced are being challenged.  Nor does the identification of "cooperating witnesses" make clear which of the over 250 potential witnesses are being challenged (with the exception of Mssrs. Rezaian, Rosenbledt, and Thia) or what specific testimony defendants are seeking to bar.  The government cannot be expected to prove independent source, inevitable discovery, or attenuation for each of the over 250 witnesses identified or 450 statements taken during the duration of the case.  Requiring the government to do so is contrary to applicable Ninth Circuit precedent.  *See Cella*, 568 F.2d at 1285; *Allard*, 600 F.2d at 1305.

### C. Defendants' Identification of the Allegedly Tainted Evidence and Potential Trial Testimony Before the Hearing Will Conserve Judicial Resources

Requiring defendants to identify the specific pieces of tainted evidence and the factual nexus before shifting the burden to the government is not only the law of this circuit, it is also the only practical way to proceed.[2]  Otherwise, concluding this already protracted proceeding in a fair manner will require substantial additional judicial resources.

Defendants' general assertion that pen registers, search warrants, witness statements, cooperating witnesses, and plea negotiations are tainted does not meaningfully focus the upcoming hearing.  Instead, in order to focus the hearing, the defendants must identify the specific pieces of evidence at issue and explain each piece's connection to the recordings.  Then, the defendants can use the hearing to focus on developing their factual showing of the requisite nexus, and the government will have a fair opportunity to meet its burden for the identified evidence upon that showing.  With the scope of the hearing established, the government can tailor its proof to the pieces of evidence that are actually at issue. Absent defendants' identification of what is at issue, the government will need to take the time

//

---

[2] To the extent that these hearings are being used as a form of discovery by the defendants, it would be highly prejudicial to expect the government to preemptively introduce evidence rebutting all allegations that the defendants might make once they have concluded their discovery in this matter.

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB

necessary to disprove taint as to all evidence that it currently believes it may use in this case and it may need to reopen proceedings after the defendants do identify the specific pieces of tainted evidence and the factual nexus thereto.

There is no reason why the defendants cannot identify the evidence they contend is tainted and explain its connection to the stationary recordings. Defendants have had the stationary recordings since December 2014, and have had the vast majority of evidence in this case since the spring of 2015. They also received additional discovery relating to the taint proceedings more than four months ago. Their reply to the motion to compel suggested that they already, in fact, know what evidence they believe is at issue. Dkt. 209 at 4 n.2. Accordingly, the defendants should be ordered to identify any allegedly tainted evidence in advance of the hearing.

## II. The Court Should Limit The Examination of the Witnesses To Testimony That Is Non-Privileged, Relevant, and Not Cumulative

Through both motions in this pleading, the government is asking the Court to impose reasonable parameters for the upcoming taint hearing, the latest installment in a process that has already consumed more than a year of the Court's time. The defendants have subpoenaed one Antitrust Division paralegal and three current or former Antitrust Division attorneys. Much of the testimony sought, described in the nearly identical declarations accompanying the subpoenas, has little, if any, bearing on the issue of whether the stationary recordings were used to obtain additional evidence. Additionally, the defendants' declarations accompanying the subpoenas appear to lay the groundwork for impermissible inquiry into privileged information.

### A. The Examination Of Any Witness Should Be Limited To Issues Related To Derivative Evidence And Inquiry Into Privileged Information Should Not Be Permitted

The relevant inquiry at a taint hearing is whether the suppressed material led to other evidence. Here, much of the information defendants are seeking has minimal relevance to issues of taint. For example, defendants seek information about the use of the stationary recordings "to prepare for witness interviews," separate from the actual use of stationary recordings during the interviews. Bornstein Decls. ¶ 9(f). But the mere preparation for witness interviews is not relevant; what matters is what actually happened during the witness interviews themselves.

//

More troubling, defendants seek information from attorneys that is protected by the work-product privilege. The work product privilege protects "written statements, private memoranda and personal recollections" prepared in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). The doctrine applies in criminal as well as civil cases. *United State v. Nobles*, 422 U.S. 225 (1975). Although the work product doctrine is not absolute, "an attorney's mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation [are] virtually undiscoverable." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014). And although work product may become discoverable if it becomes a "pivotal issue," *Holmgren v. State Farm Mutual Auto Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992), the existence of an unlawful search and subsequent taint hearing does not entitle defendants to the government's work product. *See United States v. Vilar*, 530 F.Supp. 2d 616, 635-36 (S.D.N.Y. 2008) (denying defendants' request that the government disclose, among other items, "any internal notes, correspondence or memoranda relating to use of the suppressed material").

Here, defendants seek information about each attorney's creation of memoranda related to the stationary recordings. Internal memoranda that analyze a government investigation are protected under the work product doctrine. *See Hickman,* 329 U.S. at 510; s*ee also* Order on Mot. to Compel, Dkt. 210 ("a memorandum about, for example, how a plea negotiation affected the government's case strategy is a document…that Rule 16(a)(2) protects"). Additionally, testimony concerning any discussion by the prosecutors or Department of Justice personnel concerning the stationary recordings is likewise protected work product. *See Hickman,* 329 U.S. at 511-12 (attorney work product can be reflected in "tangible and intangible ways" and protects against "forcing an attorney to repeat" his or her mental impressions).

Furthermore, the declarations for attorney testimony are overbroad because they are not limited to the pre-indictment time period or the investigation. Instead, defendants appear to seek testimony regarding attorney notes and memoranda relating purely to the ongoing litigation regarding suppression. This is core work-product information, concerning attorneys' mental impressions relating to litigation strategy, and attenuated from the issue of how the suppressed recordings were used in the investigation.

//

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB

8

For example, even if a memorandum written by prosecutors in connection with this litigation refers to information from the stationary recordings, a memorandum is not evidence subject to suppression, nor would it have led to any additional evidence.

For each witness, defendants' inquiry should be limited to the investigation. *See* H'rg Tr. 24: 13-15, Jan. 17, 2017 (limiting defendants' inquiry to the period up to the time of the indictment). Defendants should not be able to inquire into the government's litigation strategy or the coding or review of the recordings in preparation for litigation. *See, e.g.*, Bornstein Decls. ¶ 9(g) (information regarding the system to "code" the suppressed recordings). Additionally, defendants should not be able to ask about mere preparation for meetings with witnesses or purely internal review of suppressed recordings disconnected from the issue of whether any further evidence was developed based on those recordings. *See, e.g.*, Bornstein Decls. ¶¶ 9(c) (creation, review, or editing of transcripts, notes, or memoranda related to the suppressed recordings); 9(f) (use of the suppressed recordings to prepare for witness interviews); 9(i) (communications with any Department of Justice or FBI personnel about what they heard while reviewing the suppressed recordings); 9(k) (documentation of or communications regarding the contents of the suppressed recordings).

### B. The Declarations Seek Cumulative Testimony Regarding Issues of Marginal Relevance

The identical, overbroad declarations served on the attorneys also seek testimony that is almost certain to be cumulative of other witnesses. For example, defendants seek information about the use of stationary recordings during witness interviews or debriefings. Bornstein Decls. ¶ 9(f). But Special Agent Bond, who authored the FBI 302 report for each of the three witness interviews in which stationary recordings were used, has been subpoenaed and is available to testify. Moreover, the three requests for testimony served on three current or former Antitrust Division prosecutors are identical, and it is unclear how much defendants intend to seek the same information from every single witness. At some point, this becomes cumulative.

The defendants' failure to limit the declarations to the investigation also indicates that they plan to seek substantial amounts of information far afield from the issue of how the suppressed recordings

//

MOT. FOR ORDER REQ. DEFS. TO IDENTIFY EVID. THEY CLAIM IS TAINTED AND MOT. *IN LIMINE* RE. ATT'Y SUBPOENAS
No. CR 14-00534 CRB

were used in the investigation.  The defendants should not be permitted to consume five court days wandering through a discussion of every single Department of Justice employee who listened to any suppressed recording, of any length, at any time, for any purpose, even years after the investigation concluded – the scope of testimony contemplated by defendants' declarations.  *See, e.g.*, Bornstein Decls. ¶¶ 9(h-i) (seeking information regarding "all" Department of Justice personnel who ever reviewed a suppressed recording).  Accordingly, the Court should exercise its discretion to limit inquiry regarding the government's general review of recordings and require the defendants to focus on whether the recordings were used to obtain additional evidence.  *See* Fed. R. Evid. 611(a).

## CONCLUSION

For the foregoing reasons, the government requests that the Court order the defendants, by February 26, to identify any evidence they are seeking to suppress as tainted and explain the nexus between the stationary recordings and the allegedly tainted evidence.  Additionally, the Court should limit the questioning at the upcoming hearing to the investigation and preclude defendants from inquiring into (a) internal review of suppressed recordings unrelated to the use of the recordings to obtain additional evidence, and (b) the review or use of suppressed recordings in connection with litigation, as opposed to the investigation, of this matter.

DATED:  February 21, 2017                              Respectfully submitted,

    /s/
Andrew J. Nicholson-Meade
Trial Attorney
Antitrust Division
U.S. Department of Justice