LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
    dan.wall@lw.com
  Ashley M. Bauer (Bar No. 231626)
    ashley.bauer@lw.com
  Colleen E. Heyler (Bar No. 313036)
    colleen.heyler@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendant Abraham S. Farag*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOSEPH J. GIRAUDO, RAYMOND A. GRINSELL, KEVIN B. CULLINANE, JAMES F. APPENRODT, and ABRAHAM S. FARAG,<br><br>　　　　　Defendants. | CASE NO. CR 14-00534 CRB<br><br>**DEFENDANT ABRAHAM FARAG'S RESPONSE TO UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Hon. Charles R. Breyer<br>Courtroom 6, 17th Floor<br>Date: April 26, 2018<br>Time: 1:30 pm |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

# INTRODUCTION

As the Government acknowledges in its Sentencing Memorandum, Antitrust Division attorneys are forbidden by policy from ever recommending non-custodial sentences for antitrust crimes. That policy, however sensible it may be in the multi-billion dollar cartel cases that are the Antitrust Division's stock and trade, is fundamentally arbitrary here. At the very least it means that one cannot take at face value that a recommendation for a 6-8 month incarceration—the lowest sentence the Government recommends in these cases—represents a true judgment by those most familiar with a case that the given defendant in fact deserves incarceration. To the contrary, that is the recommendation used by Antitrust Division attorneys with respect to those who are the least deserving of incarceration.

The Government's ostensible recommendation that Abraham Farag be incarcerated for 7 months must be viewed in that light. It is the third-lightest sentence recommended among all defendants, putting Abraham **high** on the list of those who **do not** deserve incarceration. No one in Abraham's position has ever been sentenced to incarceration in any of the real estate foreclosure auction cases that the Antitrust Division has prosecuted in the Bay Area, Sacramento, or beyond. It is unfortunate that the Antitrust Division makes its prosecutors ask for incarceration in circumstances where they know judges do not order incarceration, but that's where we are. We respectfully ask the Court to enter a non-custodial sentence, as the PSR recommends; specifically a sentence of probation, a fine of $20,000, and restitution in the amount of $7,000. This sentence properly balances Abraham's history and characteristics, the need for the sentence to afford adequate deterrence and protect the public, and the need to avoid unwarranted sentence disparities.

# ARGUMENT

**A.    A Custodial Sentence Would Create an Unwarranted Sentencing Disparity**

The Government argues that "prison terms for Antitrust offenders should be common."[1]
*United States v. Abraham Farag,* United States' Mem. and Mot. for Downward Departure

---

[1] The Government makes this same argument in the sentencing memoranda for each of the level-11 and level-13 defendants filed before this Court.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

Pursuant to U.S.S.G. § 5K1.1 ("USA Sentencing Memo") at 4, Case No. 3:14-cr-00534, ECF No. 304 (April 19, 2018).  They *are* common—albeit nowhere near universal—in the large scale cartel prosecutions to which the Antitrust Division normally devotes is resources.  They may also be appropriate for the ringleaders of these cartels, given the length and breadth of their illegal activity and, importantly, the way the "Big Five" approached and corrupted a lot of fundamentally honest people who just wanted to bid on properties.  Prison terms, however, have been anything but "common" for individuals like Abraham on the periphery of these auction cases.

*No other level-11 offender who received a 5K1.1 reduction has, in any real estate foreclosure auction case, received a custodial sentence.*  Not one.  For that matter, none of the level-13 offenders have been sentenced to prison either.  Probation is therefore not the "dramatic variance" the Government repeatedly argues in its sentencing memo; it is the normal sentence, the most proportional sentence, and the most just sentence for a first-time, low-level offender like Abraham.  It is also the sentence recommended by Probation Officer Aakash Raju.  *United States v. Abraham Farag*, Presentence Investigation Report ("PSR") at 20, Case No. 3:14-cr-00534, ECF No. 296 (April 12, 2018).  Any "variance" is therefore strictly with an arbitrary Antitrust Division policy that allows senior officials to say that the Division always seeks incarceration, no matter how much evidence mounts that judges do not go along with those requests.

In recommending for Abraham the third-lightest sentence among all defendants, the Government clearly signals that Abraham is among those least deserving of incarceration.  Nevertheless, required to make a case for incarceration, the Government makes arguments such as "given the magnitude of the financial harm caused by [Abraham's] conduct," a custodial sentence is appropriate. USA Sentencing Memo at 4.  Putting aside the fact that the Government is simply assuming that "financial harm," the claim is facially not believable.  First, note that Abraham's restitution payment as calculated by the Government is all of $7,000.  It makes no sense that Abraham would owe so little in restitution if he caused great financial harm.  Note also

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

that Government does not argue that Abraham profited significantly from the collusion, because there is no basis in the record to do so.

The Government has also agreed that the affected volume of commerce was less than $1 million, asserting the specific figure of $928,087.00.[2]  If that is correct, the potential "financial harm" would be some (unproven) percentage of $928,087.00, representing underpayment on the underlying properties.  Whatever that is, it is very, very small in the scale of antitrust cases generally and antitrust cases in which individuals have been incarcerated.  The volume of commerce figure is itself small in relation to others.  Notably, six of the level-11 offenders[3] and twenty-two of the level-13 offenders[4] in Bay Area real estate foreclosure auction cases who received sentences of probation carried volumes of commerce higher than $928,087.00.  It is the fourth-lowest volume of commerce among the seventeen other defendants at levels 11 and 13 still to be sentenced before this Court.  Of course, Abraham's volume of commerce is much lower than those with even higher offense levels, and much lower than anyone who was incarcerated.  So this "magnitude of the financial harm" argument cannot be taken seriously.

---

[2] Abraham has not stipulated to the $928,087.00 volume of commerce asserted by the Government.

[3] *United States v. Bradley Roemer*, 4:15-cr-00229-PJH; *United States v. Jorge Wong*, 4:11-cr-00428-PJH; *United States v. Thomas Franciose*, 4:11-cr-00426-PJH; *United States v. Irma Galvez*, 4:13-cr-00414-PJH; *United States v. Eric Larsen*, 4:11-cr-00723-PJH; *United States v. Gernot Zapernick*, 4:14-cr-00512-PJH.

[4] *United States v. Wesley Barta*, 4:13-cr-00413-PJH; *United States v. Charles Rock*, 4:14-cr-00607-PJH; *United States v. Danli Liu*, 4:12-cr-00611-PJH; *United States v. Thomas Bishop*, 4:14-cr-00001-PJH; *United States v. Stan Kahan*, 4:13-cr-00412-PJH; *United States v. Timothy Powers*, 4:11-cr-00722-PJH; *United States v. Joseph Vesce*, 4:13-cr-00415-PJH; *United States v. Douglas Ditmer*, 4:12-cr-00448-PJH; *United States v. Miguel DeSanz,* 4:14-cr-00581-PJH; *United States v. Grant Alvernaz*, 4:11-cr-00432-PJH; *United States v. Dominic Leung*, 4:12-cr-00083-PJH; *United States v. Keith Slipper*, 4:12-cr-00447-PJH; *United States v. Michael Renquist*, 4:13-cr-00143-PJH; *United States v. Garry Wan*, 4:14-cr-00604-PJH; *United States v. Mark Roemer*, 4:15-cr-00228-PJH; *United States v. Douglas Moore*, 4:11-cr-00431-PJH; *United States v. Charles Gonzales*, 4:14-cr-00099-PJH; *United States v. Hilton Wong*, 4:12-cr-00082-PJH; *United States v. David Margen*, 4:11-cr-00425-PJH; *United States v. Jaime Wong*, 4:11-cr-00427-PJH; *United States v. John Shiells*, 4:14-cr-00581-PJH; *United States v. Peter McDonough*, 4:13-cr-00144-PJH.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

The important point is that sentencing Abraham to prison does not comport with the sentences received by similarly-situated defendants. *Everyone* comparable to him received probation.

### B. Probation Will Serve as a Sufficient Punishment and Deterrent

The Government says that "[g]iven Farag's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent." *See* USA Sentencing Memo at 4. We could not disagree more. Because of the Government's insistence on overcharging this case at the outset—advancing mail and wire fraud charges it had to dismiss later, and inflating the volume of commerce with unsustainable claims about additional properties—Abraham declined to plead earlier and was indicted. A substantial percentage of his assets went to his defense, as the Court saw with its own eyes. Abraham paid for much of the work that uncovered the Government's illegal recording campaign. The Court can be confident that this experience alone, its enormous cost and the stigma of pleading to a felony, are more than enough to ensure that Abraham Farag will avoid future criminality. The Court saw how emotional Abraham was at his Change of Plea Hearing. His remorse is real and palpable. Were this Court to enter no sentence at all, the probability that Abraham will commit another crime is zero.

The Government's boilerplate argument about "substantial assets" should therefore be disregarded.[5] The Court is tasked with determining whether, for each particular defendant, a sentence is reasonable and not unnecessary in light of the factors articulated in § 3553. *See United States v. Booker*, 543 U.S. 220, 245 (2005). This necessitates a consideration of the history and characteristics of particular individuals—something the Government's sentencing recommendation does not do.

---

[5] The Government uses an identical argument to justify the same sentence for a different defendant in this case. *See United States v. James Appenrodt*, United States' Sentencing Mem. and Mot. for Downward Departure Pursuant to U.S.S.G. § 5K1.1 at 4, ECF No. 303 (April 19. 2019) ("Given Appenrodt's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

By all accounts, except for his interactions with a corrupted auction, Abraham has led an exemplary life many people would aspire to. He is a dedicated and loving father to his three children—Fiona, Otto, and Niles—for whom he serves as the primary caretaker while his wife Claudia works at the job she loves. *See* Decl. of Ashley M. Bauer in Supp. of Def. Abraham Farag's Sentencing Mem. ("Bauer Decl.") Exs. 1, 2, 4, 9 & 12. He is the financial anchor for his parents and brothers. *See* Bauer Decl. Exs. 1, 6, 7 & 9. He has devoted most of his life, before and after his crime, to giving back to communities and individuals in need of aid. *See* Bauer Decl. Exs. 5, 10, 15, 16 & 17. Each and every letter filed in his support attests to those attributes, and the authors were all shocked and surprised to hear Abraham had committed this crime. *See* Bauer Decl. Exs. 2, 4, 6, & 15. They wrote about Abraham's regret, his shame, and how years of soul-searching has greatly humbled him. *See* Bauer Decl. Exs. 7, 9. Where is the acknowledgement of that in the Government's sentencing recommendation? Incarceration is not a fitting or warranted punishment for someone like Abraham.

The Government's argument disregards entirely the significant punitive effect a felony record and a sentence of probation can have on an individual. This detrimental effect is not something to simply write off, as the Government appears to do. Probation "places substantial restrictions on a person's liberty; may require home detention, community confinement, and community service; and places the person at risk of imprisonment for a minor technical violation." Fed. Defender Sentencing Guidelines Comm., Reply Public Comment on Proposed 2017 Holdover Amendments at 6 (Nov. 6, 2017), *available at* https://www.ussc.gov/sites/default/ files/pdf/amendment-process/public-comment/20171010Reply/FPD.pdf. A felony status carries significant collateral consequences as well, ones that Abraham will certainly feel and ones this Court should not ignore.

As the nineteen letters filed in his support point out, Abraham poses no risk of recidivism. His commitment to his family and community before and after the indictment are indicative of the type of life he does and will continue to lead. This crime was a mistake, and one Abraham will not make again.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

**C.     Abraham Did Not Attend Auctions to Participate in Payoffs**

The Government has the temerity to suggest that Abraham attended the auctions to participate in illegal payoffs—$7,000, mind you—when the lead FBI agent on the case, Special Agent Roan Wynar, testified in Your Honor's court that Abraham was an example of a person who came to the auction with good intentions but was corrupted by the Big 5.  *See* Tr. of Feb. 29, 2016 Hr'g at 186:7-14, *United States v. Joseph Giraudo, et al.*, Case No. 3:14-cr-0534-CRB, ECF No. 102 (Mar. 7, 2016) (the Big Five would "reach out to people who would come to the auction, and some number of those people would end up becoming corrupted or become part of the illegal behavior").  Special Agent Wynar is correct.  Abraham attended in order to purchase rental properties and support his family through a means that would allow him to spend more time with his children.  Bauer Decl. Ex. 20 at -2977.  As the Government admits, he was then approached by members of the Big 5 – Joe Giraudo when Abraham attended an auction in 2003, seven years before he committed any crime, and Mo Rezaian in 2009 – who, in a manner that others have compared to extortion and shakedown, told him that he could either go along with the payoff scheme or fail in his efforts to buy properties.  *See* Bauer Decl. Ex. 22 at -1661, Ex. 24 at -2251-52, Ex, 21 at -242-43.

Abraham went along with this—as little as possible and to his everlasting regret.  He understands and accepts that it was wrong for him to do so.  But the Government is way out of line to argue that Abraham wanted this to happen.  Absolutely not.  Under antitrust law, it is no defense to say that one participated in a conspiracy wholly or partly as a result of coercion.  *See*, *e.g.*, *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 161 (1948) ("[A]cquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one.").  The Government persistently fails to acknowledge the importance of that principle in not only prosecuting Abraham, but many others who were engulfed in the Big Five's activities.  Yet no fair-minded person could look at these facts and not acknowledge, as Special Agent Wynar did, that there was a moment in this chronology when Abraham was a victim rather than a perpetrator.  And no, that does not excuse what he did in going along with the corruption.  It just

means that he should be punished for those actions, rather than this fable that he wanted all this to happen.

If Abraham had any intention of using corrupt auctions as a means to profit for himself, he would not have waited (in the Government's timeline) six years before returning to the auction, and he would have sought out Giraudo upon his return, which he did not.  He returned to the auctions with legitimate motives, unaware of the existence of a far-reaching, pervasive bid-rigging scheme perpetrated by a man he had interacted with for only a few minutes six years prior.  Abraham was confronted anew by a different member of the Big Five and that is how he ultimately became swept up into the preexisting corruption.  Special Agent Wynar witnessed that process and attested to it.

The Government also claims that Abraham's "outsider" status was "not for lack of trying", and that he cultivated a relationship with the Big Five.  USA Sentencing Memo at 5. But the Government also explicitly states that Abraham "was never accepted as a member of that group." *Id.* at 2.  The fact is that "cultivating a relationship" with the Big Five was a necessity for anyone who wanted to buy properties on a regular basis.  They **controlled** the San Mateo auctions through threats, bribes, and intimidation.  *See* Bauer Decl. Ex. 21 at -241.  This Court heard testimony from Special Agent Wynar about how one member of the Big Five, Mo Rezaian, instigated a fight with another bidder and escalated the situation to a point where Special Agent Wynar felt it necessary to intervene, despite the risk of blowing his cover.  *See United States v. Giraudo*, Jan. 17, 2017 Hr'g Tr. at 105:15-22, Case No. 3:14-cr-0534-CRB, ECF No. 196 (Jan. 18, 2017) ("Mr. Giraudo and Mr. Rezaian's level of intimidation and manipulation of the scene at the auction bubbled over into an actual fight [which] caused us to have to actively intervene . . . I was worried that [the other bidder] was going to get hurt, so I intervened.").  Abraham, like so many other bidders, had witnessed the Big Five bully, threaten and even assault those who crossed them.  We accept that he should not have tried to stay in their good graces, but no one should confuse his actions with supporting the corruption.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB

**CONCLUSION**

Abraham Farag is not a dishonest man who poses any threat to the community. He mishandled an unfamiliar and difficult situation, and even by the Government's account is one of the three least culpable defendants in this case—and the only one of the three who has had to bear indictment and the expense of defending this case to this point. He has gone through enough. This fundamentally good man should be allowed to move on with his life, continuing the good works that define him far more than this crime ever will. Mr. Farag respectfully requests that the Court impose a sentence of probation, a $20,000 fine, and $7,000 restitution.

DATED: April 23, 2018                Respectfully submitted,

By  /s/ Daniel M. Wall
Daniel M. Wall (Bar No. 102580)
Ashley M. Bauer (Bar No. 231626)
Colleen E. Heyler (Bar No. 313036)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Fax: (415) 395-8095
dan.wall@lw.com
ashley.bauer@lw.com
colleen.heyler@lw.com

*Attorneys for Defendant Abraham S. Farag*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEF. ABRAHAM FARAG'S REPONSE TO
USA'S SENTENCING MEMORANDUM
CASE NO. CR 14-00534-CRB